IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

                                *
THE JOHNS HOPKINS UNIVERSITY
AND ARROW INTERNATIONAL, INC.,*

     Plaintiffs,              *     CIVIL NOS.: WDQ-05-0759
                                                 WDQ-06-2711
v.                            *

DATASCOPE CORPORATION,        *

     Defendant.               *

*    *    *    *    *    *    *    *    *    *    *    *    *

MEMORANDUM OPINION

     The Johns Hopkins University ("JHU") and Arrow

International, Inc., ("Arrow") sued Datascope Corporation

("Datascope") for patent infringement.  Pending are the

Plaintiffs' motions for Judgment on Partial Findings and to

Alter/Amend Judgment and the Defendant's motions for Judgment as

a Matter of Law and to Alter/Amend Judgment.  For the reasons

discussed below, the Court will grant the Plaintiffs' motion for

judgment on partial findings, the Plaintiffs' and Datascope's

motions to amend, and will deny Datascope's motions for judgment.

I.   Background

     JHU owns Patents 5,766,191, "Percutaneous Mechanical

Fragmentation Catheter System" (the "'191 patent"); 6,824,551,

"Perucutaneous Mechanical Fragmentation Catheter System" (the

"'551 patent"); and 7,108,704, "Percutaneous Mechanical

1

Fragmentation Catheter System" (the "'704 patent").  The '191 patent was issued on June 16, 1998, the '551 patent was issued on November 30, 2004, and the '704 patent was issued on September 19, 2006.  The patents claim methods for fragmenting clots within hemodialysis grafts.  Arrow licenses the patents and sells a device based on them.  Jan. 18, 2006 Mem. Op.

On June 11, 2007, the Court bifurcated the trial so that the jury hearing the Plaintiffs' infringement claims would not hear Datascope's evidence that the patents are unenforceable because of the Plaintiffs' inequitable conduct and unclean hands.  From June 11-15, the parties tried the infringement claims and Datascope's obviousness defense.  On June 15, 2007, the jury found for the Plaintiffs, and the Court entered judgment for $690,875.

On July 25, 2007, the parties tried Datascope's inequitable conduct and unclean hands defenses.  Datascope offered evidence of the Plaintiffs' allegedly improper conduct in prosecuting the '704 patent.  At the conclusion of Datascope's evidence, the Plaintiffs moved for Judgment on Partial Findings under Federal Rule of Civil Procedure 52(c).

II.  Analysis

A.  Motion for Judgment on Partial Findings

The Plaintiffs argued that Datascope did not offer clear and convincing evidence of inequitable conduct.  Specifically, the

Plaintiffs argued that Datascope did not establish that: (1) the attorney prosecuting the patent knew of information withheld from the Patent and Trademark Office (the "PTO"); (2) the allegedly withheld information was material; (3) the withheld information was not cumulative; and (4) there was an intent to deceive the PTO.

1.    Standard of Review

Rule 52(c) permits the entry of judgment as a matter of law on a claim or defense when: (1) a "party has been fully heard on an issue[;]" (2) "the court finds against th[at] party on that issue[;]" and (3) the claim or defense cannot succeed "without a favorable finding on that issue." Fed. R. Civ. P. 52(c).  "In considering a motion for judgment for partial findings under Fed. R. Civ. P. 52(c) the judge, as trier of the facts, must weigh and consider all of the evidence presented." *Cherrey v. Thompson Steel Co., Inc.*, 805 F.Supp. 1257, 1261 (D. Md. 1992).  Judgment under Rule 52(c) must be supported by findings of fact and conclusions of law.  Fed. R. Civ. P. 52(a).

2.    Applicable Law

a.    Inequitable Conduct

"Patent applicants owe a 'duty of candor and good faith' to the PTO."  *Bruno Indep. Living Aids, Inc. V. Acorn Mobility Services, Ltd.*, 394 F.3d 1348, 1352 (Fed. Cir. 2005) (*citing* 37

3

C.F.R. § 1.56(a) (2004)).  Inequitable conduct may include

"affirmative misrepresentations of a material fact, failure to

disclose material information, or submission of false material

information, coupled with an intent to deceive." *Baxter Intern.,*

*Inc. v. McGaw, Inc.*, 149 F.3d 1321, 1327 (Fed. Cir. 1998).  To

prove inequitable conduct resulting from a failure to disclose,

Datascope

> must offer clear and convincing proof of: (1) prior art or
> information that is material; (2) knowledge chargeable to
> applicant [or the attorney who prosecuted the application]
> of that prior art or information and of its materiality; and
> (3) failure of the applicant to disclose the art or
> information resulting from an intent to mislead the PTO.

*Cordis Corp. v. Boston Scientific Corp.*, 188 Fed. Appx. 984 (Fed.

Cir. 2006) (*citing FMC Corp. v. Manitowoc Co.*, 835 F.2d 1411,

1415 (Fed. Cir. 1987)).

The "[a]pplicant must be chargeable with knowledge of the

existence of the prior art or information, for it is impossible

to disclose the unknown." *Manitowoc*, 835 F.2d at 1415.  Indeed,

the applicant must have *actual knowledge* of the prior art

reference.  *Digital Control, Inc. v. Charles Mach. Works*, 437

F.3d 1309, 1318 (Fed. Cir. 2006).  The Federal Circuit has said,

however, that "one should not be able to cultivate ignorance, or

disregard numerous warnings that material information or prior

art may exist, merely to avoid actual knowledge of that

information or prior art." *Brasseler, U.S.A. I, L.P. v. Stryker*

*Sales Corp.*, 267 F.3d 1370, 1384 (Fed. Cir. 2001) (quotations

4

omitted).

b.   Unclean Hands

The doctrine of "[u]nclean hands bars a party from receiving equitable relief because of that party's own inequitable conduct. *Food Lion, Inc. v. S.L. Nusbaum Ins. Agency, Inc.*, 202 F.3d 223, 228.   Datascope bears the burden of proving by clear and convincing evidence that the Plaintiffs acted with unclean hands."   *In re Omeprazole Patent Litigation*, 483 F.3d 1364, 1374 (Fed Cir. 2007).

3.   Findings of Fact

Datascope alleges that Alan Miller, Ph.D., breached the duty of candor.   On October 7, 2004, Dr. Miller, a patent prosecuting attorney at Amster Rothstein & Ebenstein LLP ("Amster"), filed the '704 patent application with the PTO.   During the prosecution of that patent, the Plaintiffs began the instant litigation against Datascope for the infringement of the '191 patent and the '551 patent.   Subsequently, the '704 patent claims were included. The Plaintiffs' litigation counsel are different Amster attorneys.

Datascope answered the Plaintiffs' interrogatories in June 2005 (the "Initial Response").   (Def. Ex. 742).   Dr. Miller read the Initial Response.   July 25, 2007 Trial Tr. 9.   That response included reference to the Fischell '425 patent--prior art that

5

Datascope contends affects the patentability of what would become the '704 patent.  Although the response noted that Datascope "*may* supplement [its] answer" after further review of the references contained in the Initial Response, Tr. 11 (emphasis added), Dr. Miller was not told that it *would* or even that it *would likely* file supplemental answers.  Importantly, Datascope did not challenge Dr. Miller's handling of the Initial Response; indeed, Dr. Miller submitted the information included in the Initial Response to the PTO--including reference to the Fischell '425 patent.

     In October 2005, Datascope supplemented its responses to the Plaintiffs' interrogatories (the "First Supplement").  (Def. Ex. 748).  In January 2006, Datascope again supplemented its responses (the "Second Supplement").  (Def. Ex. 752).  Dr. Miller was not informed of either set of supplemental answers.  Tr. 13-24.  Datascope also provided the Plaintiffs with the expert report of Thomas Aretz, M.D. (the "Aretz Report").  (Def. Ex. 753).  Dr. Miller did not learn of the Aretz Report.  Tr. 14-15. Dr. Miller did not ask the litigation team for additional information, and the litigation team did not offer it to him. *Id*. 15-20.  Thus, Dr. Miller did not have knowledge of Datascope's (1) further explanations regarding prior art and, in particular, the Fischell '425 patent; (2) evidence of prior publications and prior uses; and (3) evidence of the ordinary

skill in the art.

4.   Conclusions of Law

Dr. Miller's submission of information from the Initial Response was not inequitable conduct.  Although it is clear that Dr. Miller did not learn of the information contained in the Supplements or the Aretz Report, Datascope contends that Dr. Miller deliberately avoided that knowledge and that such avoidance requires that he be charged with that knowledge.  This contention rests solely on the reference in the Initial Response that Datascope *may* supplement that response.  As Dr. Miller and the litigation team did not discuss their work, there is insufficient evidence that he cultivated his ignorance.

Datascope argued that because Dr. Miller and the litigation team worked for Amster, the Court may infer deliberate avoidance. If Dr. Miller and the litigating attorneys were in separate law firms, it would be improper to draw such an inference from their lack of communication.  The Court will not draw that inference merely because the attorneys practice at the same firm.  Such an inference would merely penalize multi-practice law firms for their depth and sophistication.

Datascope argued that the Plaintiffs had a duty of inquiry. Indeed, the Federal Circuit has said that applicants should inquire

when they were on notice of certain factual issues which may

>       have been material to the prosecution of the patent
>       application. . ..  Attorneys must conduct meaningful
>       inquiries when the surrounding factual circumstances would
>       cause a reasonable attorney to understand that relevant and
>       questionable material information should be assessed.

*Brasseler*, 267 F.3d at 1385.  The 'duty' to inquire does not

exist in a vacuum; it requires notice of specific circumstances

that warrant investigation.  *Id*. at 1383.  Although the

Supplements or the Aretz Report may have created this duty had

Dr. Miller known of their existence, he had no knowledge of them

and, accordingly, he had no duty to inquire.  *Cordis*, 188 Fed.

Appx. at 987 (*citing Brasseler*, 267 F.3d at 1383).

      The Court finds that Datascope has not proven, by clear and

convincing evidence, that Dr. Miller knew of the additional

information.  As that knowledge is a required element of

inequitable conduct and such conduct is required for Datascope's

unclean hands argument, Datascope's two arguments fail and the

motion for judgment on partial pleadings will be granted.

B.    Motions for Judgment as a Matter of Law

      Datascope has filed two motions seeking judgment as a matter

of law under Federal Rule of Civil Procedure 50(b) or, in the

alternative, for a new trial under Rule 59(a).  The first motion

seeks judgment or a new trial on the issue of invalidity for

obviousness, and the second motion seeks judgment or a new trial

on the issue of infringement.

1.   Standard of Review

   "[A] court should not 'disturb a jury verdict unless without weighing the evidence or assessing witness credibility, it concludes that reasonable people could have returned a verdict only for the moving party.'"  *Willis v. Youngblood*, 384 F.Supp.2d 883, 886 (D. Md. 2005) (*quoting Randall v. Prince George's County, Md.*, 302 F.3d 188, 201 (4th Cir. 2002)).  "If a reasonable jury could reach only one conclusion based on the evidence or if the verdict in favor of the nonmoving party would necessarily be based upon speculation and conjecture, judgment as a matter of law must be entered."  *Id.* (*citing Myrick v. Prime Ins. Syndicate, Inc.*, 395 F.3d 485, 489 (4th Cir.2005)).  In reviewing such a motion, a court "must view the evidence in the light most favorable to the Plaintiff, and the Plaintiff receives the benefit of all inferences."  *Id.*

   Under Rule 59(a), a district court may grant a new trial if it determines that "(1) the verdict is against the clear weight of the evidence, or (2) is based upon evidence which is false, or (3) will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict."  *Id.* (*quoting Atlas Food Sys. and Sers., Inc. v. Crane Nat. Vendors, Inc.*, 99 F.3d 587, 594 (4th Cir. 1996)).  A decision under Rule 59(a) is within the discretion of the court. *Id.*

2.   Invalidity for obviousness

Datascope bears the burden of proof on invalidity and must prove that the patents are invalid by clear and convincing evidence. *Pfizer, Inc. v. Apotex, Inc.*, 480 F.3d 1348, 1359-60 (Fed. Cir. 2007). As Datascope bears the burden of proof, the standard for granting its motion for judgment is different than that for traditional Rule 50(b) motions. Indeed, a motion for judgment as a matter of law "in favor of a party bearing the burden of proof may be granted only where (1) the movant has established its case by evidence that the jury would not be at liberty to disbelieve and (2) the only reasonable conclusion is in [the movant's] favor." *Nobelpharma AB v. Implant Innovations, Inc.*, 141 F.3d 1059, 1065 (Fed. Cir. 1998) (internal quotations omitted).

Here, Datascope's evidence of invalidity for obviousness is largely based on the testimony of Dr. Aretz. Dr. Aretz "walk[ed] the jury through" the prior art and other references that Datascope contended rendered the patents at issue obvious. Reply Mem. Supp. Invalidity Mot. 11. The jury determined the credibility of Dr. Aretz, a testifying witness who was cross-examined, and the other admitted evidence of obviousness. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). As The jury was free to disbelieve the evidence supporting the obviousness defense, the motion for judgment as a matter of law

10

as to invalidity for obviousness must be denied.

In support of its motion for a new trial on the issue of invalidity for obviousness, Datascope contends that the Plaintiffs reneged on a commitment that was the basis for the Court's decision to bifurcate.  As Datascope's argument does not address the grounds for a new trial under Rule 59(a) and the Plaintiffs did not argue that submission of the Fischell '425 patent *created an enhanced presumption of validity* for the Plaintiffs' patents, the Court will not grant a new trial on the issue of invalidity for obviousness.

3.   Infringement

Viewing the evidence in the light most favorable to the Plaintiffs, the Court concludes that a reasonable jury could have concluded--like the jury here--that Datascope infringed the Plaintiffs' valid patents.  The jury's finding was certainly not against the clear weight of the evidence.  Accordingly, the motion for judgment as a matter of law or, in the alternative, for a new trial on infringement will be denied.

C.   Motions to Alter/Amend Judgment

The Plaintiffs and Datascope have moved, under Federal Rule of Civil Procedure 59(e), to alter/amend the judgment.  The Plaintiffs seek a permanent injunction and Datascope seeks to recharacterize the judgment based on the jury's verdict as an

interim judgment rather than a final judgment.

1.    Standard of Review

Under Federal Rule of Civil Procedure 59(e), a court may grant a motion for reconsideration to: 1) accommodate an intervening change in controlling law; 2) account for new evidence previously unavailable; or 3) correct a clear error of law or prevent manifest injustice. *Bogart v. Chapell,* 396 F.3d 548 (4th Cir. 2005).

2.    Recharacterization of the judgment resulting from the jury trial

The Plaintiffs have not opposed Datascope's motion to amend the June 15, 2007 judgment.  In addition, the trial ending on June 15 was the first in the bifurcated proceedings.  As a result, the Court concludes that the June 15, 2007 judgment, which resulted from the jury's verdict as to infringement and invalidity for obviousness, was not a final judgment.  Paragraph 2 of that judgment should have said:

> 2.  That any and all prior rulings made by the Court disposing of any claims against any parties are incorporated by reference therein, and this order shall be deemed to be a final Judgment within the meaning of Fed. R. Civ. P. 58 as to infringement and invalidity for obviousness, but shall remain open pending the Court's adjudication of the defendant's defenses and counterclaims regarding inequitable conduct and unclean hands.

3.    Permanent Injunction

Whether a permanent injunction should issue has been argued by the parties.  "[T]he decision whether to grant or deny injunctive relief rests within the equitable discretion of the district courts, and . . . such discretion must be exercised consistent with traditional principles of equity, in patent disputes no less than in other cases governed by such standards." *eBay Inc. v. Mercexchange, LLC*, 126 S.Ct. 1837, 1841 (2006).  "As a result, the familiar four-factor test applies in disputes arising under the Patent Act."  *Id.* at 1839.  Accordingly, the Plaintiffs must demonstrate:

> (1) that [they have] suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff[s] and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*Id.*

Datascope's product competes directly with the Plaintiffs' product.  In fact, it is the only competition and thus, its sale reduces the Plaintiffs' market share.  Continued sales by Datascope will irreparably harm the Plaintiffs.  *See Smith & Nephew, Inc. v. Synthes (U.S.A.)*, 466 F.Supp.2d 978, 982-83 (W.D. Tenn. 2006) (loss of market share and loss of name recognition from competition is irreparable harm).  If the Plaintiffs do not obtain injunctive relief, others may be encouraged to infringe their patents and risk litigation, thus devaluing the Plaintiffs'

property.

The jury concluded that Datascope infringed the Plaintiffs'
patents.  As "the principal value of a patent is its statutory
right to exclude, the nature of the patent grant weighs against
holding that monetary damages will always suffice to make the
patentee whole." *Hybritech Inc. v. Abbott Laboratories*, 849 F.2d
1446, 1456-57 (Fed. Cir. 1988); *Smith & Nephew*, 466 F.Supp.2d at
984 ("Monetary damages generally are not an adequate remedy
against future infringement").  The importance of the Plaintiffs'
continuing right to exclude favors a permanent injunction.

The balance of hardships favors a permanent injunction.
Datascope's evidence of potential harm from a permanent
injunction issue is speculative and slight.  Datascope contends,
without evidence, that an injunction would harm its relationship
with its customers, which may result in lost sales of unrelated
products.  This conjectural harm is slight.  Moreover,
Datascope's loss of sales of the infringing product is not
accorded much weight.  *See Smith & Nephew*, 466 F.Supp.2d at 984
(hardship for loss of sales and for ceasing operations is not
sufficient because they are direct consequences of the illegal
patent infringment).  The Court concludes that the balance of
harms favors injunctive relief.

The final question is whether the public interest would be
disserved by the issuance of a permanent injunction.  There is

14

evidence that the Plaintiffs have sufficient manufacturing capacity to meet the demand currently met by Datascope. Moreover, there is public interest in strong patent protection. Accordingly, the public interest favors a permanent injunction in this case.

Upon consideration of the traditional equitable factors, the Court concludes that a permanent injunction is appropriate.

III. Conclusion

For the reasons discussed above, the Court will grant the Plaintiffs' motion for judgment on partial findings, the Plaintiffs' and Datascope's motions to amend, and will deny Datascope's motions for judgment.

August 9, 2007
Date

_____/s/_____
William D. Quarles, Jr.
United States District Judge

15