IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

<table>
<tr><td></td><td>*</td><td></td></tr>
<tr><td>THE JOHNS HOPKINS UNIVERSITY<br>AND ARROW INTERNATIONAL, INC.,</td><td>*</td><td></td></tr>
<tr><td>Plaintiffs,</td><td>*</td><td></td></tr>
<tr><td></td><td></td><td>CIVIL NOS.: WDQ-05-0759</td></tr>
<tr><td>v.</td><td>*</td><td>WDQ-06-2711</td></tr>
<tr><td>DATASCOPE CORPORATION,</td><td>*</td><td></td></tr>
<tr><td>Defendant.</td><td>*</td><td></td></tr>
</table>

*   *   *   *   *   *   *   *   *   *   *   *   *

MEMORANDUM OPINION

Johns Hopkins University ("JHU") and Arrow International, Inc. ("Arrow") sued Datascope Corporation ("Datascope") for patent infringement.  On August 9, 2007, the Court enjoined Datascope's sale and distribution of the ProLumen device. Pending is Datascope's Emergency Motion for Stay of Injunction Pending Appeal and Request for Expedited Ruling.  On August 29, 2007, the Court held a hearing on Datascope's emergency motion, and for the reasons discussed below, Datascope's motion will be denied.

I.   Background

On June 15, 2007, following a five-day jury trial on Plaintiffs' infringement claims and Datascope's obviousness defense, the jury found for the Plaintiffs and the Court entered judgment for $690,875.  On July 25, 2007, the parties tried Datascope's inequitable conduct and unclean hands defenses.

1

Following post-trial motions, the Court granted Plaintiffs permanent injunctive relief.  Paper Nos. 149, 150.

Datascope stopped marketing and advertising the ProLumen device in October 2006.  Second Robert Cathcart Decl. ¶ 6. Average sales of the ProLumen device have decreased from 237 units per month in 2005 to 135 units per month in 2007.  *Id.* ¶ 3. Datascope does not manufacture ProLumen devices but obtains them from a contractor.  *Id.* ¶ 8.  Datascope's contractor has 200 units of ProLumen near completion, and an open purchase order for 800 units to ship at later dates.  *Id.* ¶ 12.  Since the injunction, Datascope has not filled customer orders and instructed its contractor to stop manufacturing ProLumen.  *Id.* Datascope currently has 140 active customer accounts for the ProLumen.  *Id.* ¶ 7.

II.  Analysis

A.  Standard of Review

In determining whether to stay a permanent injunction pending appeal, courts consider: "(1) whether the stay applicant has made a strong showing that [they are] likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Standard Havens Prods., Inc. v. Gencor Indus., Inc.*, 897 F.2d 511, 512

(Fed. Cir. 1990) (internal quotation marks omitted) (*citing Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)).  Equal weight need not be attached to each factor, as "the formula cannot be reduced to a set of rigid rules." *Braunskill*, 481 U.S. at 777. A stay is appropriate if the movant "'can nonetheless demonstrate a substantial case on the merits,' provided the other factors militate in movant's favor." *Standard Havens*, 897 F.2d at 513 (emphasis omitted) (*quoting Braunskill*, 481 U.S. at 778).

B.   Merits

Datascope argues that a stay of the permanent injunction should be granted because (1) it is likely to prevail on appeal and (2) without a stay, it will have to abandon the ProLumen device.  Plaintiffs counter that Datascope has not produced any new evidence justifying a stay and that its arguments on abandonment of the ProLumen product are insufficient as a matter of law.

Datascope contends that the Federal Circuit will likely reverse the jury verdict on infringement and invalidity and the Court's decision rejecting Datascope's inequitable conduct and unclean hands defenses.  Datascope argues that the Court need not changes its mind on the merits of its earlier rulings, but "acknowledge that reasonable judges on an appellate court may disagree." Def.'s Reply Mem. at 12 (*citing St. Agnes Hosp. of Balt., Inc. v. Riddick*, 751 F. Supp. 75, 76 (D. Md. 1990)).

Specifically, Datascope targets the Court's failure to: cite particular evidence of infringement, assess evidence of invalidity based on obviousness, and properly interpret the testimony of the original patent prosecuting attorney on unenforceability.

In its briefs and at the hearing, Datascope raised no issues that would jeopardize the trial result; Datascope simply disagrees with the Court's decisions.  The errors of which Datascope complains--assessing evidence and witness credibility-- are the types of judgments that are within the sound discretion of the Court.

Datascope also argues that if a stay is not granted, it will have to abandon the ProLumen device.  Datascope asserts that if it is unable to fill customer orders during pendency of the appeal, its customer base will disappear, and it will be unable to sell the ProLumen product line to a prospective buyer. Plaintiffs counter that the ProLumen was a failing product in 2005, and no purchaser would buy a product line with declining sales and no marketing support.  Therefore, Datascope's abandonment of the ProLumen device preceded the injunction.

At the hearing, the Court explored options for minimizing the effect of the injunction on Datascope during the pendency of the appeal.  Datascope proposed depositing with the Court the $650,875 jury verdict and a 18% royalty on any continued sales of

4

ProLumen.  Datascope also sought to maintain a large inventory of ProLumen devices and continue to fill orders.  Plaintiffs contend that a permanent injunction was the only relief that would adequately protect their interests.

Datascope chose to stop marketing and advertising ProLumen in October 2006 and average sales figures have declined since 2005.  Datascope acknowledges that there are other options for patient treatment beside the ProLumen and Plaintiffs' devices.  Given the declining sales of ProLumen, Datascope's decision to stop advertising the device, the availability of other options for physicians, and Datascope's inability to show a likelihood of success on appeal, a stay of the injunction is not appropriate.

III. Conclusion

For the reasons discussed above, the Court will deny Datascope's motion for stay of injunction pending appeal.


August 31, 2007                    _____/s/_____
Date                               William D. Quarles, Jr.
                                   United States District Judge